IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| VIRGINIA TRANSFORMER CORP., <br><br> *Plaintiff,* <br><br> v. <br><br> LANCASTER SAFETY CONSULTING, INC., <br><br> *Defendant.* | Civil Action No. 2:25-cv-680 <br><br> Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Virginia Transformer Corp. ("Virginia Transformer") brought this action against Defendant Lancaster Safety Consulting, Inc. ("LSCI") for breach of contract (Count I) and breach of warranty (Count II). (ECF No. 1). LSCI filed a partial motion to dismiss seeking to dismiss Virginia Transformer's claim for approximately $93,000 in damages resulting from the Virginia Occupational Safety and Health violation as described in the complaint. (ECF No. 9). For the following reasons, the motion will be denied.

**I.   FACTUAL BACKGROUND**

Virginia Transformer, which is in the business of manufacturing power transformers, entered into a contract ("Agreement") with LSCI on or about May 13, 2024, for LSCI to provide training services and workplace safety consultations. Virginia Transformer paid the required prepayment of $298,000.00 to cover the period of May 1, 2024, through June 30, 2025, in which LSCI would provide its services. The Agreement provided that LSCI would "perform a 'comprehensive safety evaluation,'" and perform the evaluation "in a similar fashion to a

1

comprehensive OSHA inspection." (ECF No. 1, ¶¶ 1, 13). Following the inspection, LSCI would suggest how Virginia Transformer might correct or address "any hazards identified" during the required inspection. (*Id.*).

On June 14, 2024, LSCI sent its Safety and Health Professional to the Troutville plant to inspect the facility, specifically report on the use of personal protective equipment ("PPE") and determine whether the equipment was appropriate "to mitigate risk of injury or exposure to hazardous conditions." (*Id.* ¶ 18). The Safety and Health Professional reported that the PPE provided by Virginia Transformer to its employees was proper, additionally noting that "he observed employees wearing appropriate PPE to mitigate risk of injury or exposure to hazardous conditions, including specifically safety toed work boots, eye protection, hearing protection, and cut resistant gloves and reported the conditions as 'Good.'" (*Id.* ¶ 18). Notably, the Safety and Health Professional did not report any need to wear hard hats as PPE at the Troutville plant, which was manufacturing power transformer tanks. (*Id.* ¶ 19).

On June 15, 2024, an employee of Virginia Transformer suffered a head injury when struck by debris after a clamp dislodged during a welding operation. As a result of his injury, Virginia's Occupation Safety and Health Department ("VOSH") cited Virginia Transformer for safety violations because its employees were not required to wear hard hats. VOSH issued a penalty of $153,740.00 to Virginia Transformer, later reduced to a fine of $93,000. (*Id.* at ¶¶ 21-23). Virginia Transformer alleges that LSCI breached the terms and express warranties contained in the Agreement by failing to adequately perform its duties under the contract. Specifically, Virginia Transformer claims that LSCI failed to flag that the failure to wear hard hats could incur regulatory sanctions. Virginia Transformer claims the costs incurred from the penalty as breach of contract

damages. (ECF No. 13, p. 11). LSCI moved to dismiss, arguing that the terms of the Agreement foreclose recovery.

## II.  STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a Court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the Court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* FED. R. CIV. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document). Here, both parties attached the Agreement to their pleadings. (ECF Nos. 1-1, 9-1). It contains: "Description of Services," "LSCI Terms and Conditions," "Addendum 'A' Trainings & Written Programs," and "Addendum 'B.'" (*Id.*). Since there is no dispute that Virginia Transformer's claims are based entirely on these documents, they will be considered by the Court in adjudicating the partial motion to dismiss.

### III. ANALYSIS

LSCI's partial motion to dismiss seeks dismissal of Virginia Transformer's claim for approximately $93,000 in damages relating to Virginia Transformer's liability for the VOSH fine. Virginia Transformer first contends that LSCI's motion should be treated as a Rule 12(f) motion to strike because it does not attack a cause of action, but rather, only a specific element of

4

damages.[1] LSCI maintains that there is no bar to filing a partial motion to dismiss under Rule 12(b)(6) where an element of claimed damages are not recoverable.

Turning to whether dismissal is appropriate, Virginia Transformer claims that LSCI was grossly negligent and acted with willful misconduct by failing to identify that Virginia Transformer's employees were not wearing hard hats as required for compliance with Occupational Safety and Health Administration ("OSHA") requirements. (ECF No. 1, ¶ 24). Included in Addendum A to the Agreement is a list of services provided by LSCI under its contract, and PPE is listed and described as "hazard identification, control, and selection of PPE." (ECF 1-1, p. 5). Addendum B to the Agreement further provides that LSCI's services include yearly on-site "Comprehensive Safety Evaluations" at each of Virginia Transformer's four facilities and the issuance of a report based on completed evaluations. (*Id.* at 8). The evaluation inspections are described in Addendum B as consisting of, amongst other services, "[u]p to (1) day on site for a safety evaluation conducted in a similar fashion to a comprehensive OSHA inspection." (*Id.*). Virginia Transformer argues that it paid for LSCI's expertise to flag issues relating to PPE, and its failure to notify Virginia Transformer of its noncompliance with OSHA's hard hat requirement was either grossly negligent or rose to a level of willful misconduct. (ECF No. 1, ¶¶ 34–37).

Relying on the "Terms and Conditions" section of the Agreement, LSCI argues that it is under no obligation to reimburse Virginia Transformer for the cost of the regulatory fine. It relies on Clauses 3 and 5 of the Agreement.

---

[1] Rule 12(f) allows a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in a pleading. FED. R. CIV. P. 12(f). "While courts possess considerable discretion in weighing Rule 12(f) motions, such motions are not favored and will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." *Miller v. Group Voyagers, Inc.*, 912 F. Supp. 164, 168 (E.D. Pa. 1996) (citations omitted).

> Clause 3 of the Agreement states:
>
> LSCI IS NOT AN INSURER: Client acknowledges that it is the sole responsibility of Client to comply with all laws and regulations including, but not limited to, the laws and regulations of the U.S. Occupational Safety and Health Administration (OSHA). Client hereby specifically and knowingly after having the opportunity to consult with its own legal counsel, hereby assumes full liability and responsibility for any violations of any laws and regulations including, but not limited to, the laws and regulations of OSHA. Client acknowledges that LSCI is not an insurer. Client is responsible for maintaining all applicable insurance coverage.

(ECF No. 1-1, ¶ 3). Clause 5 of the Agreement states:

> LIABILITY: Under no circumstances shall LSCI be liable to Client for incidental, consequential, special, exemplary or punitive damages, including, but not limited to: any claim related to lead, silica, or asbestos or claims for lost profit, lost revenue or other similar economic losses. Except to the extent of LSCI gross negligence or willful misconduct, any claims by client against LSCI arising out of this Agreement shall be limited to the refund of payment made to LSCI by Client pursuant to this Agreement, and in no event shall LSCI's liability under this Agreement exceed the total amount paid to LSCI under this Agreement, regardless of the cause or action or claim giving rise to such liability.

(*Id.*, at ¶ 5). LSCI asserts that, based on the plain language of Clauses 3 and 5, it cannot be liable to Virginia Transformer for its requested relief. LSCI characterizes the purpose of Clause 3 as a clarification of "the scope of the agreement and the services LSCI provided," and Clause 5 as "a limited exculpatory clause" that only addresses potential liability for "acts and omissions pursuant to its contractual duties"—arguing that neither clause offers an avenue for recovering Virginia Transformer's requested relief. (ECF No. 17, pp. 3–4).

Virginia Transformer disagrees. It argues that Clause 3 is an unenforceable exculpatory clause under Pennsylvania law, but if the Court finds that Clause 3 is enforceable when read in the context of the entire contract, Virginia Transformer contends that it "does not expressly foreclose Virginia Transformer's right to recover the VOSH fines."[2] Similarly, it states that Clause 5 is

---

[2] Virginia Transformer maintains that Clauses 3 and 5 are invalid and unenforceable exculpatory clauses because they "contravene public policy," citing to *Topp Copy Prods., Inc. v. Singletary*,

unenforceable, but if the Court finds otherwise, Clause 5 cannot be read to preclude LSCI's liability for its alleged gross negligence or willful misconduct. (ECF No. 13, p. 7, 11); (ECF No. 20, p. 3).

The Court reads Clauses 3 and 5 differently than both parties. "The paramount goal of contract interpretation is to determine the intent of the parties." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (citation omitted). The contracting parties' intent may be ascertained by the language of the contract unless the terms of the contract are made uncertain due to extrinsic facts beyond the four corners of the contract. *Id.* at 76. At the motion to dismiss stage, a court may resolve claims involving contract interpretation if the unambiguous terms of the contract at issue bar the relief sought. *Jaskey*, 564 F.Supp. at 163. A court will find a contract unambiguous if the contract language "is reasonably capable of only one construction." *Tamarind Resort Assocs. v. Gov't of the Virgin Islands*, 138 F.3d 107, 110–111 (3d Cir. 1998). As applied to the claims in this case, the Court finds that Clauses 3 and 5 are not exculpatory clauses because they do not preclude Virginia Transformer from bringing a cause of action. The Court holds that the clauses are limitations of liability, rather than exculpatory in nature.

"Under Pennsylvania Law, courts have routinely referred to the specific language of the contract in issue to determine the scope of an exculpatory/limitation of liability clause, and therefore, the type of conduct for which liability was excluded or limited." *Royal Indem. Co. v. Security Guards, Inc.*, 255 F.Supp.2d 497, 508 (E.D. Pa. 2003) (citations and internal quotation

---

626 A.2d 98, 99 (Pa. 1993) ("Exculpatory clauses are generally valid only when the clause: (1) does not contravene public policy and (2) is between parties relating entirely to their own private affairs, (3) each of whom is a free bargaining agent to the agreement so that the contract is not one of adhesion"). (ECF No. 13, p. 7).

marks omitted).³ The United States Court of Appeals for the Third Circuit, in *Valhal Corp. v. Sullivan Associates, Inc*, 44 F.3d 195, 202 (3d Cir. 1995), differentiated an exculpatory clause from a limitation of liability clause, stating "[a]n exculpatory clause immunizes a person from the consequences of his/her negligence," whereas a limitation on liability clause "does not bar any cause of action, nor does it require someone other than [the defendant] to ultimately pay for any loss caused by [the defendant's] negligence." It additionally held that where a defendant remains liable for its own negligence, even where amount of liability is capped, the clause is valid and enforceable. *Id*.

At best, the language of Clauses 3 and 5 of the Agreement limits a very narrow type of possible liability, leaving alternative avenues of recourse—meaning neither clause is exculpatory. Clause 3 emphasizes that LSCI is "not an insurer" if Virginia Transformer fails to comply with laws and regulations of OSHA. Clause 3's language, however, does not immunize LSCI from liability for its failure to perform its own obligations (leaving possible recourse for Virginia Transformer). (ECF No. 1-1, ¶ 3). Clause 5 is not exculpatory because it does not release LSCI from liability for gross negligence and/or willful misconduct, nor does the language in the clause bar Virginia Transformer's ability to pursue a breach of contract action. Clause 5 does not shield LSCI from all potential liability. Instead, it sets a limitation on amount of damages. So long as

---

³ The Agreement provides that it is governed, construed, and enforced in accordance with the laws of the Commonwealth of Pennsylvania, and that any action related to it should be heard in "any state or Federal court situated in Allegheny County, Pennsylvania and the Western District of Pennsylvania." (ECF No. 1-1, p. 4). Pennsylvania courts generally give effect to contractual choice of law provisions. *See Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. 1989) (citation omitted); *see also Gay v. CreditInform*, 511 F.3d 369, 389–90 (3d Cir. 2007). The Court will honor the parties' choice-of-law selection in the Agreement and apply Pennsylvania law.

such a limit on damages is "reasonable and not so drastic as to remove the incentive to perform with due care," Pennsylvania courts will enforce a limitation clause. *Valhal*, 44 F.3d at 204.

Like the Third Circuit found in *Valhal* ($50,000 limitation of liability clause is reasonable and enforceable), the Court finds the Agreement's $289,000 limitation on liability is reasonable and does not immunize LSCI from the consequences of its own actions. Through provisions of the Agreement and the facts alleged in its complaint, Virginia Transformer has offered a sufficient basis for its claims against LSCI. Virginia Transformer seeks to recover $93,000 in damages for LSCI's alleged failure to provide the services as promised under the Agreement terms. As provided in Clause 5, Virginia Transformer may recover up to $289,000 if LSCI is found to have breached the contract's terms. Virginia Transformer alleges that it paid LSCI to provide—amongst other services—programming, training, and comprehensive safety evaluations for the purpose of OSHA compliance. The Agreement does not, as LSCI maintains, bar Virginia Transformer's right to relief. Whether LSCI acted with gross negligence or willful misconduct requires additional facts. At this stage, Virginia Transformer's factual allegations detailing LSCI's failure to provide instruction on proper PPE equipment, coupled with language from the Agreement regarding LSCI's obligation to provide such instruction, is sufficient for its claim to proceed.

### IV. CONCLUSION

For the foregoing reasons, the partial motion to dismiss will be denied. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

10/6/25
_____
Dated